UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENNETH WORKMAN,<br><br>                    Petitioner,<br><br>     v.<br><br>RANDY BLADES and LAWRENCE WASDEN,<br><br>                    Respondents. | Case No. 1:08-cv-00052-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending in this habeas corpus matter is Respondents' Motion for Partial Summary Dismissal. (Dkt. 24.) The Court finds that decisional process would not be aided by oral argument, and it will resolve the motion after consideration of the parties' written briefing. D. Idaho L. Civ. R. 7.1(d).

For the reasons that follow, the Court will grant Respondents' Motion in part and deny it in part. The Court will dismiss part of Claim 1 (the "*Strickland* claim") and all of Claims 2, 4, 5, 6, 7, and 8. Claim 1 (limited to a "*Cronic* claim") and Claim 3 will not be dismissed at this time.

## BACKGROUND

### 1.     The Crime, Guilty Plea, and Sentencing Hearing

In 2001, Petitioner drove his vehicle off of Interstate 84 and into two pickup trucks

that were parked on the side of the road. (State's Lodging F-11, p. 1.) Two people who were standing between the trucks were seriously injured. (*Id.*) It was later determined that Petitioner had high levels of heroin, amphetamine, and methadone in his blood at the time of the crash. (*Id.*)

The State charged Petitioner with two counts of aggravated driving under the influence (DUI) and one count of possession of heroin. (State's Lodging A-1, pp. 28-29.) The State also filed an Information Part II, alleging that Petitioner was a persistent violator of the law based on two prior felony convictions. (*Id.* at 38-39.) Petitioner eventually agreed to plead guilty to the two counts of aggravated DUI and to the persistent violator charge, in exchange for the prosecutor's dismissal of the possession count and her agreement to recommend no more than life in prison with 25 years fixed. (State's Lodging A-3, p. 1.)

At the sentencing hearing, the prosecutor offered victim impact statements to the court, illustrating how severely the incident had affected the victims' lives. (State's Lodging A-3, pp. 33-38.) While the prosecutor recommended a sentence of life in prison with 25 years fixed, she devoted the bulk of her argument to pointing out Petitioner's lengthy criminal history and the aggravated nature of the offense. (*Id.* at 39-59.)

In response, Petitioner's trial counsel, D.C. Carr, told the court that:

Anything I say on behalf of my client is empty. This is a god-awful crime, just god-awful. Any kind of argument – and I have sat and read the PSI, and given a particularly long time of thinking of how as Ken's attorney I would address a court in any kind of mitigation, and I'm left empty.

**MEMORANDUM DECISION AND ORDER - 2**

(State's Lodging A-3, pp. 56-57.) Carr further indicated that he could not argue against the prosecutor's recommendation of 25-years-to-life and, after making a few more statements to the court, he simply asked for "some sort of mercy for [his] client." (State's Lodging A-3, pp. 57, 59.)

The trial court disregarded the parties' sentencing recommendation and sentenced Petitioner to life in prison without the possibility of parole on each count. (State's Lodging A-1, pp. 60-61.) In doing so, the court placed heavy weight on Petitioner's extensive criminal history, long-time drug addiction, and previous failures at rehabilitation. (State's Lodging A-3, pp. 59-66.) The court later entered a separate "Order for Restitution and Civil Judgment," requiring Petitioner to pay the two victims $32,391.44 in restitution. (State's Lodging C-1, pp. 10-11.)

### 2.	Initial Post-Judgment Motions and Direct Appeal

Petitioner's Idaho Criminal Rule 35 motion to reduce his sentences was denied. (State's Lodging A-6, pp. 9-10.) Petitioner also filed a motion to withdraw his guilty plea, which the district court summarily denied. (State's Lodging A-7, p. 2.)

On direct appeal, Petitioner claimed that the trial court abused its discretion in denying his motion to withdraw his guilty plea and that the trial court abused its discretion by imposing an excessive sentence. (State's Lodging B-1.) The Idaho Court of Appeals rejected those arguments, and Petitioner did not seek review in the Idaho Supreme Court. (State's Lodging B-4, p. 3.)

While the direct appeal was pending, Petitioner filed a "Renewed Motion to

**MEMORANDUM DECISION AND ORDER - 3**

Withdraw Guilty Plea" in the district court, which was again summarily denied. (State's Lodging C-1, pp. 44-46.) Petitioner filed a second Rule 35 motion, this time alleging that his sentence was illegal, and a motion to terminate the trial court's restitution order. (State's Lodging C-1, pp. 109-11, 122-26.) The trial court denied the motions.

On appeal, the Idaho Court of Appeals concluded that Petitioner's sentences were not illegal, and it declined to reach the merits of Petitioner's challenge to the restitution order after concluding that the motion to terminate restitution was untimely. (State's Lodging D-8, p. 4.) The Idaho Supreme Court denied Petitioner's Petition for Review. (State's Lodging D-11.)

### 3.    First Post-Conviction Action

In December 2004, Petitioner filed an initial application for post-conviction relief in the district court, raising a variety of claims, including that trial counsel D.C. Carr was constitutionally ineffective and had abandoned Petitioner during the guilty plea process and at the sentencing hearing. (State's Lodging E-1, pp. 5-21.) The trial court granted the State's motion for summary dismissal and dismissed the application without an evidentiary hearing. (State's Lodging E-2, p. 243-69.) The Idaho Court of Appeals affirmed, but the Idaho Supreme Court accepted review of the case. (State's Lodging F-8.)

In a published opinion, the Idaho Supreme Court affirmed the district court. (State's Lodging F-11.) The Idaho Supreme Court concluded, in relevant part, that (1) trial counsel did not fail to subject the State's case to meaningful adversarial testing such that the presumed prejudice rule from *United States v. Cronic*, 466 U.S. 648 (1984), would apply,

**MEMORANDUM DECISION AND ORDER - 4**

(2) the record showed that Petitioner was competent to enter a guilty plea even though he was taking psychotropic medication at the time, (3) Petitioner's guilty plea was voluntary, and (4) Petitioner pled guilty despite the trial court's failure to formally ask him whether he was pleading guilty. (State's Lodging F-11.)

### 4.      Successive Post-Conviction Action/Third Rule 35 Motion

Petitioner filed a successive petition for post-conviction relief in 2007, this time raising claims of ineffective assistance of counsel during the direct appeal, double jeopardy, and cruel and unusual punishment. (State's Lodging I-1, pp. 6-13.) The district court dismissed the successive petition on procedural grounds, and the Idaho Court of Appeals affirmed that decision. (State's Lodging I-1, pp. 92-93; State's Lodging J-4.) The Idaho Supreme Court declined to review the case. (State's Lodging J-7.)

Petitioner also pursued yet another Rule 35 motion, claiming that his sentences were illegal on grounds that he had previously alleged. (State's Lodging K-1, pp. 10-11.) He was unsuccessful in the district court and in the Idaho Court of Appeals. (State's Lodging K-1, L-4.) Petitioner's Petition for Review was denied. (State's Lodging L-4.)

### 5.      Federal Habeas Petition

Petitioner submitted a Petition for Writ of Habeas Corpus in this Court on January 28, 2008, but the case was stayed while Petitioner completed another round of state court collateral review. (Dkts. 3, 10.) The stay was lifted on May 27, 2010, and the Court authorized Petitioner to file an Amended Petition, which he did on June 11, 2010, adding one claim to his original Petition. (Dkt. 17.)

**MEMORANDUM DECISION AND ORDER - 5**

In the Amended Petition and the original Petition, Petitioner raises the following eight claims for relief:

(1) ineffective assistance of counsel because his trial counsel failed to subject the prosecution's case to meaningful adversarial testing and committed other errors;

(2) denial of due process of law because of the trial court's failure to advise Petitioner of the maximum sentences that could be imposed;

(3) ineffective assistance of counsel and the denial of due process of law because Petitioner entered his plea of guilty while under the influence of psychotropic medication;

(4) a violation of the Eighth Amendment's prohibition on cruel and unusual punishment because the fixed life sentences are grossly disproportionate to the crime committed;

(5) a violation of Petitioner's right against twice being placed in jeopardy because he was convicted for two counts of aggravated DUI based on one incident;

(6) ineffective assistance of counsel on direct appeal;

(7) cruel and unusual punishment, and violation of due process, because of a burdensome restitution order; and

(8) the denial of due process because Petitioner was deprived of the legal resources mandated by statute to prepare and present timely claims in his

**MEMORANDUM DECISION AND ORDER - 6**

post-conviction proceedings.

(Dkts. 3, 17.)

Respondents have responded to the claims by filing a Motion for Partial Summary Dismissal. (Dkt. 24.) In their Motion, Respondents argue that all of Petitioner's claims except limited aspects of Claims 1and 3 were not fairly presented to the Idaho Supreme Court in a procedurally proper manner, and because the time to raise them in the state courts has passed, the Court must dismiss the claims as procedurally defaulted. (Dkt. 24-1, pp. 6-17.) Respondents further contend that Claim 8 does not provide a cognizable basis for habeas corpus relief. (Dkt. 24-1, pp. 17-18.) Petitioner has filed a Response to the Motion and a "Rebuttal in Support of Traverse," and Respondents have submitted a Reply. (Dkts. 26, 29, 30.)

The Court is fully advised in this matter and is now prepared to issue its ruling.

## STANDARD OF LAW

### 1.      Fair Presentation

A habeas petitioner must first exhaust his state court remedies before a federal court can grant relief on a constitutional claim. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust state court remedies properly, the petitioner must have fairly presented his constitutional claims, giving the state courts a full and fair opportunity to correct the alleged error at each level of appellate review.  *Baldwin v. Reese*, 541 U.S. 27 (2004).

The mere similarity between a state law claim and a federal claim does not

**MEMORANDUM DECISION AND ORDER - 7**

constitute fair presentation of the federal claim, and general references in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are likewise insufficient. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (similarity of claims is insufficient); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (appeal to broad principles insufficient). The petitioner must ordinarily cite the federal constitutional provision that supports his claim, federal cases that apply the constitutional rule, or state court cases that clearly analyze the federal claim. *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000); *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). Additionally, if the petitioner fundamentally alters the claim by pleading new material facts in federal court, the requirement of fair presentation has not been satisfied. *Kelly v. Small*, 315 F.3d 1063, 1069 (9th Cir. 2003); *Belmontes v. Brown*, 414 F.3d 1094, 1117-18 (9th Cir. 2005) (citations omitted).

### 2.      Procedural Default

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161 (1996). A habeas claim is also defaulted when the petitioner actually raised the constitutional claim in state court, but the state court denied or dismissed the claim after invoking a procedural bar that is independent of federal law and is adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A claim that rests upon an independent and adequate state law ground will not be

**MEMORANDUM DECISION AND ORDER - 8**

considered in a habeas proceeding unless the petitioner can establish cause for his procedural default and actual prejudice, or he can show a miscarriage of justice in his case, which means that he is probably innocent. *Coleman*, 501 U.S. at 750.

## DISCUSSION

### 1.    Abandonment by Counsel – Claim 1

Petitioner contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel because his counsel "failed to subject the prosecutions [sic] case to meaningful adversarial testing, committed numerous cumulative errors and abandoned petitioner at sentencing by presenting no mitigating defense invoking the standard and holdings of *U.S. v. Chronic* [sic]." (Dkt. 3, p. 2.) In addition to relying on *Cronic*, Petitioner also contends in the "Issues and Argument" portion of his Petition that his counsel's errors deprived him of his right to the effective assistance of counsel under the two-part test set out in *Strickland v. Washington*, 466 U.S. 688 (1984). (Dkt. 3, pp. 7-12.)

Respondents argue that Petitioner exhausted this claim only to the extent that he relies on the standard of law from *Cronic* and not *Strickland*. (Dkt. 24-1, p. 10.) The Court has reviewed the state court record and agrees. In the Idaho appellate courts, Petitioner claimed that prejudice should be presumed because his counsel abandoned him, and he did not attempt to argue that he was actually prejudiced by counsel's alleged errors. The issue will be so limited here.

**MEMORANDUM DECISION AND ORDER - 9**

### 2.      Failure to Advise Petitioner of the Maximum Penalty – Claim 2

Petitioner next asserts that the district court's failure to inform him that he could be subjected to a fixed life sentence rendered his guilty plea involuntary. Petitioner raised a similar issue during his direct appeal, but he did not seek review in the Idaho Supreme Court. The failure to seek review in the highest state court means that this claim was not fairly presented or properly exhausted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). After reviewing the parties' arguments, however, the Court concludes that it is easier to dispose of this claim on its merits than to resolve difficult procedural default questions. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (noting that courts can deny relief on the merits despite a procedural default); *see also* Rule 4 of the Rules Governing Section 2254 Cases (authorizing district courts to dismiss petitions where it plainly appears that the petitioner will not be entitled to relief).

To comport with due process of law, a defendant's guilty plea must be entered voluntarily and with an awareness of the direct consequences of the plea. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The direct consequences include the maximum possible sentence that the defendant could face. Here, Petitioner was informed on several occasions that the maximum possible penalty for his crimes, with the persistent violator enhancement, was life in prison. For instance, at the change of plea hearing, the trial court confirmed that the State would recommend a life sentence with 25 years fixed, and Petitioner indicated that he understood the nature of the plea agreement. (State's Lodging A-3, p. 3.) Petitioner's counsel also said that he had discussed the plea agreement with

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner and that Petitioner wanted to plead guilty to save the State some money and to "come clean." (*Id*. at 4.) At the sentencing hearing, the court again confirmed that the State would ask for life with 25 years fixed. (*Id*. at 18.)

Therefore, the record discloses that Petitioner was aware, or should have been aware, that he faced a maximum potential sentence of life in prison. Petitioner argues that he did not know that a life sentence could be imposed without the possibility of parole, but parole eligibility is not a fact that is constitutionally significant in this context. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("[w]e have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary . . ."); *see also United States v. Roberts*, 5 F.3d 365, 368 (9th Cir. 1993) (holding that the district court did not violate Fed. R. Crim. P. 11 by failing to advise defendant of his parole ineligibility); *Lambert v. Blodgett*, 393 F.3d 943 n.26 (9th Cir. 2004) (citing *Hill*).

### 3.    Pleading Guilty Under the Influence Psychotropic Drugs – Claim 3

For his next claim, Petitioner alleges that his guilty plea was involuntary because he was taking psychotropic medication at the time and did not understand the consequences, and that his counsel was constitutionally ineffective in letting him plead guilty in a heavily medicated state.

Respondents concede that Claim 2 is properly exhausted to the extent that Petitioner relies on the Due Process Clause of the Fourteenth Amendment, but they argue that the aspect of this claim that alleges ineffective assistance of counsel under the Sixth

**MEMORANDUM DECISION AND ORDER - 11**

Amendment was not fairly presented to the state courts. Petitioner counters that he attempted to raise that component of the claim in a pro se brief that he sent to the Idaho Supreme Court during the first post-conviction matter – a copy of which he has submitted to this Court – but the Clerk of the Idaho Supreme Court returned it to him because he was represented by counsel. Relying on *Clemmons v. Delo*, 124 F.3d 944 (1997), he argues that his pro se brief fairly presented the claim to the Idaho Supreme Court.

In *Clemmons*, a Missouri prisoner's appointed counsel failed to include in his appellate brief an issue alleging that the State had withheld exculpatory evidence from the defense (a "*Brady* claim"). 124 F.3d at 947-48. The prisoner lodged a pro se supplemental brief that included that claim, among others, and requested the Missouri Supreme Court to accept the brief, but the court denied the request without comment. *Id*. On habeas review, the Eighth Circuit concluded that the *Brady* claim had been fairly presented to the state court by the prisoner's supplemental brief. *Id*. at 948-49.

The Court sees some obvious parallels between *Clemmons* and the present case, but it chooses to reserve its ruling on the procedural default issue until after additional briefing has been offered by the parties. Respondents shall include a merits response to the Sixth Amendment claim in their answer and final briefing.[1]

---

[1] If Respondents continue to press the procedural default argument, they may wish to direct the Court's attention to a clear, firmly established, and regularly followed state court rule regarding the circumstances under which pro se appellate briefs are or are not accepted. *See Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003) (holding that the state bears the ultimate burden of proving the adequacy of a state procedural bar).

**MEMORANDUM DECISION AND ORDER - 12**

**4.      Cruel and Unusual Punishment – Claim 4**

In his fourth claim, Petitioner contends that he is being subjected to cruel and unusual punishment, in violation of the Eighth Amendment, because two fixed life sentences are "grossly disproportionate to the offense committed." (Dkt. 3, p. 3.) Like Claim 2, the Court again finds that it is easier move past Respondents' current procedural arguments and to dispose of this claim directly on its merits. *See Lambrix*, 520 U.S. at 525.

The Eighth Amendment contains a principle that a sentence cannot be grossly disproportionate to the offense committed. *See Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010) (internal quotation marks omitted); *see also Ewing v. California*, 538 U.S. 11, 20 (2003) (*citing Harmelin v. Michigan*, 501 U.S. 957, 996-997 (1991) (Kennedy, J., concurring in part and concurring in judgment)). This is a very narrow principle, however, and an Eighth Amendment violation will be found "only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (citing *Harmelin*, 501 U.S. at 1001)(Kennedy, J., concurring in part and concurring in judgment)). When faced with a claim of unconstitutional sentencing disproportionality, a reviewing court must begin by comparing the gravity of the offense and the severity of the sentence. *Graham*, 130 S.Ct. at 2020. Only "in the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" should the court then move to the next step of comparing the defendant's sentence with the sentences received by other offenders in the same and other jurisdictions. *See Id*. (quoting *Harmelin*, 501 U.S. at 1005).

This Court is not convinced that the circumstances of the present case raise an

**MEMORANDUM DECISION AND ORDER - 13**

inference of gross disproportionality. While it is true that Petitioner received the most severe sentence that Idaho law allows short of the death penalty, the facts of his crime and the harm that he caused were extremely aggravated. Petitioner chose to drive after consuming large amounts of intoxicating substances, which led to the entirely foreseeable consequence of a serious accident in which two people were severely injured and permanently disabled. Diane King broke nearly every bone in her body and suffered a ruptured spleen and liver. Anthony Barton's right leg was severed and his left leg was crushed. Both victims endured numerous surgeries and suffered psychological trauma. It is for this reason that Petitioner's case is not like *Solem v. Helm*, 463 U.S. 277, 292 (1993), where the Supreme Court struck down the defendant's sentence of life without the possibility of parole for the non-violent offense of writing a worthless check of $100. In contrast, Petitioner's crime exacted a far greater personal and societal toll than the minimal property interest that the defendant had invaded in *Solem*. Petitioner's attempt to recast his offense as "non-violent" is unpersuasive.

Nor can the facts of the crime be isolated from Petitioner's lengthy criminal history. Petitioner was forty-nine years old when he was sentenced, and he had accumulated a history of misdemeanors and felonies dating back over thirty years, including numerous drug convictions, thefts, and driving infractions. Two prior felony convictions exposed him to the sentencing enhancement that resulted in his life sentences. Idaho has a strong interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established

**MEMORANDUM DECISION AND ORDER - 14**

by its criminal law." *Rummel v. Estelle*, 445 U.S. 263, 284-85 (1980); *see also Ewing*, 538 U.S. at 25 (noting that "[r]ecidivism has long been recognized as a legitimate basis for increased punishment").

The state court judge was rightly concerned that Petitioner would continue to pose a danger to the public if he were not incarcerated over the long term, and the sentences that she imposed reflect that concern. These sentences were undoubtedly harsh, and another judge may have reached a different conclusion about the appropriate punishment, but the facts and circumstances of this case do not raise an inference of gross disproportionality. Petitioner's Eighth Amendment claim will be denied.

### 5.    Double Jeopardy – Claim 5

Petitioner next contends that his Fifth Amendment right not to be twice placed in jeopardy has been violated. He appears to rely on two theories. First, he contends that he should not have been convicted and punished for two counts of aggravated DUI based on what he claims was one indivisible course of conduct. Second, he argues that only one of his sentences should have been enhanced by the persistent violator charge. Claim 5 is plainly meritless regardless whether it was fairly presented to the Idaho Supreme Court in its current form.

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This protection applies not only to successive prosecutions, but also to multiple punishments for the "same offense." *United States v. Dixon*, 509 U.S. 688, 696 (1993). "[W]here the same

**MEMORANDUM DECISION AND ORDER - 15**

act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304 (1932).

When a defendant is charged with multiple counts based on the same statutory provision, as here, the question is instead whether the legislature intended for multiple punishments to be imposed under the statute. *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 224-26 (1952); *Bell v. United States*, 349 U.S. 81, 81-84 (1955). This issue requires a determination of the "allowable unit of prosecution," *Universal C.I.T.*, 344 U.S. at 221, an inquiry that turns on the statutory text and the intent of the legislature, *see Sanabria v. United States*, 437 U.S. 54, 69-70 (1978).

Petitioner was charged and convicted under Idaho Code § 18-8006, which criminalizes "causing great bodily harm, permanent disability, or permanent disfigurement to any person" while driving under the influence of alcohol or drugs. The Idaho Court of Appeals has already concluded that the Idaho legislature intended for the gravamen of this crime to be the offender's causing of great bodily injury to another person rather than the single act of driving while impaired. *State v. Turney*, 214 P.3d 1169, 1170-71 (Idaho Ct. App. 2009). Under this reasoning, then, "when there are multiple victims that have received great bodily harm, multiple charges may appropriately be filed against the offender." *Id*. at 1171. In other words, it is the harm to the victim or victims that the legislature sought to punish more severely by enacting the aggravated DUI statute.

**MEMORANDUM DECISION AND ORDER - 16**

This Court must defer to the state court's interpretation of the statute as allowing multiple counts based on multiple victims. *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir.1994) (holding that habeas relief is "unavailable for alleged errors in the interpretation or application of state law"); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Because Petitioner seriously injured two people when he drove under the influence of drugs, the State was free to charge, convict, and sentence him on two counts of aggravated DUI without violating double jeopardy principles.

Petitioner's second theory, that he should not have been subjected to two sentencing enhancements stemming from one persistent violator charge, involves the interpretation and interplay of state statutory laws related to sentencing enhancements. The Idaho Court of Appeals addressed Petitioner's argument on the merits and concluded that state law did not preclude the trial court from enhancing his sentences on both counts. (State's Lodging D-8, p. 4.) This Court has no authority to find otherwise. *See Estelle*, 502 U.S. at 67-68.

### 6.    Ineffective Assistance of Appellate Counsel – Claim 6

In this claim, Petitioner alleges that he was deprived of his right to the effective assistance of counsel during his direct appeal. (Dkt. 3, p. 3.) More specifically, he asserts that his counsel (1) failed to argue an Eighth Amendment basis to support the excessive sentencing claim, (2) suffered from a conflict of interest, and (3) incompetently advised Petitioner not to file a petition for review in the Idaho Supreme Court. (Dkt. 3, p. 27.) As with Claims 2, 4, and 5, the Court will address the merits based on the state court record.

**MEMORANDUM DECISION AND ORDER - 17**

A convicted defendant has a constitutional right to the effective assistance of counsel during his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). To prove ineffective assistance of counsel, Petitioner must show that his appellate counsel's performance was both unreasonably deficient and that he was actually prejudiced on appeal. *Strickland v. Washington*, 466 U.S. 668, 684 (1984); *see Smith v. Robbins*, 528 U.S. 259, 286 (2000) (holding that the *Strickland* test applies to claims of ineffective assistance of appellate counsel). To prove prejudice, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the appeal would have been different. *Robbins*, 528 U.S. at 288.

Appellate counsel need not raise every non-frivolous issue requested by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Indeed, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 535 (1986) (quoting *Barnes*, 463 U.S. at 751-752). Generally, to show ineffective assistance of appellate counsel, an omitted issue must have been significant and obvious on the record and clearly stronger than the issues that were raised. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

These standards afford Petitioner no relief. First, the Court has already concluded that Petitioner's substantive cruel and unusual punishment claim is lacking in merit. There is no reasonable probability that the Idaho Court of Appeals or Supreme Court would have

**MEMORANDUM DECISION AND ORDER - 18**

reversed had Petitioner's appellate counsel raised an Eighth Amendment issue during the direct appeal.

Petitioner's "conflict of interest" claim appears to be based primarily on his belief that the appellate attorney who orally argued his case on direct appeal was unprepared and waived an important issue at oral argument. (Dkt. 3, pp. 29-30.) Petitioner was represented by the State Appellate Public Defender (SAPD) during that appeal, and the attorney who wrote the appellate brief, Paul Sonenberg, left his position with the SAPD before oral argument. One of the issues that Sonenberg had included in the written brief was that Petitioner did not understand that he was facing a potential sentence of life in prison without the possibility of parole. Another SAPD attorney, Sara Thomas, then substituted for Sonenberg. As proof of her supposed incompetence, Petitioner points to the following single line in the Court of Appeals' written opinion: "[a]t oral argument on this appeal, counsel for [Petitioner] conceded that a reasonable person in Workman's situation would have understood that life in prison was the potential maximum punishment resulting from his guilty plea." (State's Lodging B-4, p. 4.)

This passage does not show that Thomas was unprepared or waived an important issue. Though she apparently conceded a fact that was clear from the record – that Petitioner should have understood that he faced a potential maximum sentence of life in prison – there is no indication from the Court of Appeals' opinion that she further conceded that Petitioner also understood that he might *never* be eligible for parole during the potential maximum life term. That key fact was the linchpin of Sonenberg's written

**MEMORANDUM DECISION AND ORDER - 19**

argument. (State's Lodging B-1, p. 18.) Even so, as this Court has indicated, due process did not demand that Petitioner be informed that he might never be eligible for parole before he entered his guilty plea. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

Petitioner's final point is that Thomas advised him not to file a petition for review in the Idaho Supreme Court, which he contends was deficient advice. Petitioner did not have a federal constitutional right to the assistance of counsel during this period of state discretionary appellate review, and any purported errors by counsel would not be of constitutional dimension. *Ross v. Moffitt*, 417 U.S. 600, 615 (1974). But even if he did have such a right, the Court finds that there is no reasonable probability that had Petitioner filed a petition for review over the routine issues decided by the Court of Appeals, the Idaho Supreme Court would have accepted review, or if it had, that it would have reversed the Court of Appeals. Absent a showing of that type of prejudice, any claim on this ground is without merit. *See Robbins*, 528 U.S. at 288.

### 7.    Arbitrary Restitution Order – Claim 7

Here, Petitioner contends that the district court's imposition of a restitution order for over $32,000 violated his right to due process of law because the court did not take into account Petitioner's inability to pay that amount during his lifetime incarceration. Petitioner also alleges that he is now subjected to cruel and unusual punishment due to the deduction of 25% of his prison account each month to pay the ordered restitution, on top of a 50% deduction for child support, which he asserts leaves him with "no funds to purchase the basic necessities or humanitarian needs while in prison." (Dkt. 3, p. 33.)

**MEMORANDUM DECISION AND ORDER - 20**

Respondents argue that while Petitioner attempted to challenge the restitution order in state court, he did not frame the issue as a federal constitutional concern. The Court agrees and further notes that Idaho Court of Appeals declined to address the merits after finding that Petitioner's motion challenging the restitution order was untimely, which is a clear state procedural bar. (State's Lodging D-8, p. 4.) Even if the claim were properly exhausted, though, it would not provide a basis on which relief may be granted on federal habeas review because it is limited to the conditions of Petitioner's confinement and not the length or duration of his punishment. *See Bailey v. Hill*, 599 F.3d 976, 981 (9th Cir. 2010) (holding that "§ 2254(a) does not confer jurisdiction over a state prisoner's in-custody challenge to a restitution order imposed as part of a criminal sentence"); *see also United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) (interpreting 28 U.S.C. § 2255 to find no cause of action challenging a restitution order).

### 8.      Defective Post-Conviction Proceedings - Claim 8

For his final claim, Petitioner alleges that he was deprived of due process in his state post-conviction matters because Idaho prisons were not stocked with case law from the Idaho Reports until 2006. Petitioner asserts that a state statute, Idaho Code § 1-505, requires Idaho prisons to maintain a full copy of the Reports and to make that resource available to prisoners. According to Petitioner, the statute provided him with a liberty interest in accessing the Reports, the absence of which hindered his ability to pursue post-conviction relief.

The Court agrees with Respondents that this claim is not cognizable on habeas

**MEMORANDUM DECISION AND ORDER - 21**

review. Idaho Code § 1-505 directs the state law librarian to distribute the Reports to various state officials, departments, and agencies, including the "library at the state penitentiary." But the interpretation of the statute is a question of state law that is not reviewable in a federal habeas matter, and affixing a due process label to the claim does not transform a state law issue into a federal issue. *Beaty v. Stewart*, 303 F.3d 975, 986 (9th Cir. 2002).

In any case, the intent underlying the statute appears to be the orderly distribution of case law reports to various state agencies and departments. There is no language in the statute that would confer an individual right on any person to access the Reports at these agencies or departments, or to bring a due process claim if such access is unavailable. Moreover, Petitioner's only claim of harm is that he was unable to prosecute his post-conviction matters effectively, and claims of a deficiency in a state's post-conviction process cannot be brought as a freestanding basis for relief in a federal habeas action. *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989).

## CONCLUSION

Based on the foregoing, Respondent's Motion for Partial Summary Dismissal will be granted in part and denied in part. The Court dismisses, as procedurally defaulted, the portion of Claim 1 that relies on *Strickland*. The Court also dismisses Claims 2, 4, 5, and 6 as plainly lacking in merit. *See* Rule 4 of the Rules Governing Section 2254 Cases. Finally, the Court dismisses Claim 7 as procedurally defaulted and, alternatively, as non-cognizable, and dismisses Claim 8 as non-cognizable.

**MEMORANDUM DECISION AND ORDER - 22**

## ORDER

IT IS ORDERED:

1.      Respondents' Motion for Partial Summary Dismissal (Dkt. 24) is

GRANTED in part and DENIED in part, as set forth herein.

2.      No later than 60 days from the date of this Order, Respondents shall file an

answer to the remainder of Claim 1 and to Claim 3, in accordance with Rule

5 of the Rules Governing Section 2254 Cases. Respondents' answer should

also contain a brief setting forth the factual and legal basis of grounds for

dismissal and/or denial of each claim. The Court does not invite separate

motions for summary judgment in this case. Petitioner shall file a reply

(formerly called a traverse), containing a brief rebutting Respondent's

answer and brief, which shall be filed and served **within thirty days** after

service of the answer. Respondent has the option of filing a sur-reply **within**

**fourteen days** after service of the reply. At that point, the case shall be

deemed ready for a final decision.

DATED:  **September 7, 2011**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 23**