UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENNETH WORKMAN,<br><br>                    Petitioner,<br><br>    v.<br><br>RANDY BLADES and LAWRENCE WASDEN,<br><br>                    Respondents. | Case No. 1:08-cv-00052-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Previously in this habeas corpus matter, the Court dismissed a portion of Claim 1 and Claims 2, 4, 5, 6, 7, and 8 in Petitioner's Petition for Writ of Habeas Corpus. (Dkt. 34, p. 22.) Respondent has filed an Answer and Brief in Support of Dismissal of the remaining claims: Claim 1 (in part) and Claim 3. (Dkt. 37.) Petitioner has submitted a Traverse, and Respondent has filed a Sur-reply. (Dkts. 38, 39.) These matters are now fully briefed and at issue. The Court finds that decisional process would not be aided by oral argument, and it will resolve this matter on the record after consideration of the parties' written submissions. D. Idaho L. Civ. R. 7.1(d).

For the reasons set forth below, the Court concludes that Petitioner is not entitled to habeas relief, and the Petition will be dismissed.

**MEMORANDUM DECISION AND ORDER - 1**

**BACKGROUND**

In 2001, Petitioner drove his vehicle off of Interstate 84 near Boise and into two pickup trucks that were parked on the side of the road. (State's Lodging F-11, p. 1.) Two people who were standing between the trucks were seriously injured. (*Id*.) It was later determined that Petitioner had high levels of heroin, amphetamine, and methadone in his blood at the time of the crash. (*Id*.)

The State charged Petitioner with two counts of aggravated driving under the influence (DUI) and one count of possession of heroin. (State's Lodging A-1, pp. 28-29.) The State also filed an Information Part II, alleging that Petitioner was a persistent violator of the law based on two prior felony convictions. (*Id*. at 38-39.) Petitioner eventually agreed to plead guilty to the two counts of aggravated DUI and to the persistent violator charge, in exchange for the prosecutor's dismissal of the possession count and her agreement to recommend no more than life in prison with 25 years fixed. (State's Lodging A-3, p. 1.)

At the sentencing hearing, the prosecutor offered victim impact statements to the court, illustrating how severely the incident had affected the victims' lives. (State's Lodging A-3, pp. 33-38.) While the prosecutor recommended a sentence of life in prison with 25 years fixed, she devoted the bulk of her argument to pointing out Petitioner's lengthy criminal history and the aggravated nature of the offense. (*Id*. at 39-59.)

In response, Petitioner's trial counsel, D.C. Carr, told the court that:

**MEMORANDUM DECISION AND ORDER - 2**

> Anything I say on behalf of my client is empty. This is a god-awful crime,
> just god-awful. Any kind of argument – and I have sat and read the PSI,
> and given a particularly long time of thinking of how as Ken's attorney I
> would address a court in any kind of mitigation, and I'm left empty.

(State's Lodging A-3, pp. 56-57.) Carr further indicated that he could not argue against

the prosecutor's recommendation of 25-years-to-life and, after making a few more

statements to the court, he simply asked for "some sort of mercy for [his] client." (State's

Lodging A-3, pp. 57, 59.)

The trial court disregarded the parties' sentencing recommendation and sentenced

Petitioner to life in prison without the possibility of parole on each count. (State's

Lodging A-1, pp. 60-61.) In doing so, the court placed heavy weight on Petitioner's

extensive criminal history, long-time drug addiction, and previous failures at

rehabilitation. (State's Lodging A-3, pp. 59-66.) The court later entered a separate "Order

for Restitution and Civil Judgment," requiring Petitioner to pay the two victims

$32,391.44 in restitution. (State's Lodging C-1, pp. 10-11.)

Petitioner's Idaho Criminal Rule 35 motion to reduce his sentences was denied.

(State's Lodging A-6, pp. 9-10.) Petitioner also filed a motion to withdraw his guilty plea,

which the district court summarily denied. (State's Lodging A-7, p. 2.)

On direct appeal, Petitioner claimed that the trial court abused its discretion in

denying his motion to withdraw his guilty plea and that the trial court abused its

discretion by imposing an excessive sentence. (State's Lodging B-1.) The Idaho Court of

**MEMORANDUM DECISION AND ORDER - 3**

Appeals rejected those arguments, and Petitioner did not seek review in the Idaho Supreme Court. (State's Lodging B-4, p. 3.)

While the direct appeal was pending, Petitioner filed a "Renewed Motion to Withdraw Guilty Plea" in the district court, which was again summarily denied. (State's Lodging C-1, pp. 44-46.) Petitioner filed a second Rule 35 motion and a motion to terminate the trial court's restitution order. (State's Lodging C-1, pp. 109-11, 122-26.) The trial court denied the motions, and Petitioner's appeal was unsuccessful. (State's Lodging D-8, p. 4; D-11.)

In December 2004, Petitioner filed an initial application for post-conviction relief in the district court, raising a variety of claims, including that his trial counsel D.C. Carr was constitutionally ineffective and had abandoned Petitioner during the guilty plea process and at the sentencing hearing. (State's Lodging E-1, pp. 5-21.) The trial court granted the State's motion for summary dismissal and dismissed the application without an evidentiary hearing. (State's Lodging E-2, p. 243-69.) The Idaho Court of Appeals affirmed, but the Idaho Supreme Court accepted review of the case. (State's Lodging F-8.)

In a published opinion, the Idaho Supreme Court affirmed the district court. (State's Lodging F-11.) The Idaho Supreme Court concluded, in relevant part, that (1) trial counsel did not fail to subject the State's case to meaningful adversarial testing such that the presumed prejudice rule from *United States v. Cronic*, 466 U.S. 648 (1984), would apply, (2) the record showed that Petitioner was competent to enter a guilty plea

**MEMORANDUM DECISION AND ORDER - 4**

even though he was taking psychotropic medication at the time, (3) Petitioner's guilty plea was voluntary, and (4) Petitioner pled guilty despite the trial court's failure to formally ask him whether he was pleading guilty. (State's Lodging F-11.)

Petitioner filed a successive petition for post-conviction relief in 2007 (State's Lodging I-1, pp. 6-13,), which the district court dismissed on procedural grounds, and the Idaho Court of Appeals affirmed that decision. (State's Lodging I-1, pp. 92-93; State's Lodging J-4.) The Idaho Supreme Court declined to review the case. (State's Lodging J-7.)

On January 28, 2008, Petitioner submitted a Petition for Writ of Habeas Corpus in this Court, but the case was stayed while he completed another round of state court collateral review. (Dkts. 3, 10.) The stay was later lifted, and the Court authorized Petitioner to file an Amended Petition, adding one claim to his original Petition, for a total of eight claims for relief. (Dkt. 17.)

In a Memorandum Decision and Order dated September 7, 2011, the Court dismissed part of Claim 1 and all of Claims 2, 4, 5, 6, 7, and 8. (Dkt. 34.) The following claims remain pending: ineffective assistance of counsel based on trial counsel's alleged failure to subject the prosecution's case to meaningful adversarial testing (a portion of Claim1), and ineffective assistance of counsel, and a denial of due process of law, because Petitioner allegedly entered his plea of guilty while under the influence of psychotropic medication (Claim 3). (*Id*. at 23.)

**MEMORANDUM DECISION AND ORDER - 5**

This matter is now fully briefed, and the Court and is prepared to issue its ruling.

## STANDARD OF LAW

The provisions of the Anti-terrorism and Effective Death Penalty Act (AEDPA) are applicable to this case. Under AEDPA, the Court cannot grant relief on any federal claim that the state court adjudicated on the merits, unless the state court's adjudication of the claim:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) has two clauses, each with independent meaning. For a decision to be "contrary to" clearly established federal law, the petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

To satisfy the "unreasonable application" clause, the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it

**MEMORANDUM DECISION AND ORDER - 6**

concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). Moreover, a federal habeas court's review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court's decision was based upon factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding." *Id*.

When the state court has not adjudicated a federal claim on the merits despite the petitioner's fair presentation of the claim, AEDPA deference is unwarranted and the Court's review is *de novo*. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). Under all circumstances, however, state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

**1.    Abandonment by Counsel – Claim 1**

In his first claim, Petitioner contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel because his counsel "failed to subject the prosecutions [sic] case to meaningful adversarial testing, committed numerous cumulative errors and abandoned petitioner at sentencing by presenting no mitigating defense

**MEMORANDUM DECISION AND ORDER - 7**

invoking the standard and holdings of *U.S. v. Chronic* [sic]." (Dkt. 3, p. 2.) In addition to

relying on *Cronic*, Petitioner also contends in the "Issues and Argument" portion of his

Petition that his counsel's errors deprived him of his right to the effective assistance of

counsel under the two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984).

(Dkt. 3, pp. 7-12.) The Court previously concluded that Petitioner had exhausted this

claim only to the extent that he relies on the standard of law from *Cronic* and not

*Strickland*. (Dkt. 34, p. 9.)

### A.      *Clearly Established Federal Law*

In *Strickland*, the United States Supreme Court set out a two-part test for resolving

most claims of ineffective assistance of counsel under the Sixth Amendment. Under that

test, to prove a constitutional violation a defendant must show that his counsel made

errors that fell below an objective standard of reasonable representation and that the

defense was actually prejudiced as a result. *Strickland*, 466 U.S. at 684. To prove

prejudice, the defendant must establish that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

*Id*.

In *Cronic*, a companion case to *Strickland*, the Supreme Court held that a

defendant may be relieved of the burden to show actual prejudice in limited situations.

*United States v. Cronic*, 466 U.S. 648, 659-62 (1984). Those situations include (1) the

absence of counsel at a critical stage of the trial, (2) the failure of counsel to subject the

prosecution's case to "meaningful adversarial testing," and (3) a fundamental breakdown

**MEMORANDUM DECISION AND ORDER - 8**

in the adversarial process such that no lawyer could provide effective assistance. *Id*. In each of these rare scenarios the defendant would be functionally deprived of the assistance of counsel altogether, and the Supreme Court determined that prejudice to the defendant's right to a fair trial would be presumed in that context.

In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court revisited and expounded on the limited nature of the second *Cronic* circumstance – an attorney's alleged failure to test the prosecution's case as an adversary – and held that the failure must be "complete," rather than partial, meaning that counsel "*entirely* fails to subject the prosecution's case to meaningful adversarial testing. *Id*. at 697 (citing *Cronic*, 466 U.S. at 659).

In *Bell*, a death sentenced prisoner argued that his counsel's failure to present any mitigating evidence on his behalf at sentencing, coupled with counsel's choice not to give a closing argument, amounted to an abdication of his role as an advocate for the defense. 535 U.S. at 696-97. The Supreme Court disagreed, noting that counsel's alleged errors did not show a complete failure to test the state's case, and were instead "plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components." *Id*. at 697-98 (citations omitted). *Strickland*, not *Cronic*, governed the claim. *Id*.

### B.     The State Court's Decision

In this case, the Idaho Supreme Court cited and discussed the legal standards from *Strickland*, *Cronic*, and *Bell*. (State's Lodging F-11, pp. 7-9.) Because Petitioner relied exclusively on *Cronic* and not *Strickland* to press his argument, the Idaho Supreme Court

**MEMORANDUM DECISION AND ORDER - 9**

framed the issue as "whether the district court correctly required [Petitioner] to show prejudice under *Strickland*, or whether [Petitioner] has submitted evidence showing that his situation is one in which prejudice must be presumed under *Cronic*." (*Id*. at 7.) Relying on *Bell* for guidance, the court concluded that Petitioner's counsel, much like the defense attorney in *Bell*, did not *entirely* fail to subject the State's case to meaningful adversarial testing. (*Id*. at 9-10.) The court instead characterized counsel's brief closing argument – in which he conceded the serious nature of the crime and did not focus on mitigating facts from Petitioner's character or background – "reflects the attorney's strategy of showing contrition and cooperation and seeking mercy." (*Id*. at 10.) The court further concluded that to the extent that Petitioner's counsel may have committed errors, as opposed to "risky though permissible strategy decisions," such errors were subject to evaluation under *Strickland*. (State's Lodging F-11, p. 10.) Because Petitioner did not challenge on appeal the district court's ruling that he had not shown *Strickland* prejudice, the Idaho Supreme Court did not take up that issue.[1] (*Id*.)

### C.    Analysis

The Idaho Supreme Court's decision must be viewed through the deferential AEDPA lens. AEDPA's core purpose is to ensure that habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems'" and not as a means of correcting run-of-the-mill errors. *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)

---

[1] This Court earlier determined that Petitioner had not fairly presented a claim based on the test from *Strickland* to the Idaho Supreme Court and that such a claim is procedurally defaulted in this proceeding. (Dkt. 34.)

**MEMORANDUM DECISION AND ORDER - 10**

(quoting *Jackson v. Virginia*, 443 U. S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Applying those standards here, this Court concludes that fairminded jurists could agree that the state court's opinion is a reasonable application of the law, especially in light of *Bell*. In reaching this conclusion, the Court does not entirely discount Petitioner's characterization that his counsel offered minimal representation, particularly during the sentencing hearing. Carr's closing argument covers a little over three pages of transcript, while the prosecutor's preceding argument in aggravation covered eighteen pages. (State's Lodging E-4, pp. 40-59.) Carr called the crime "god-awful" and noted that he had tried to develop arguments in mitigation but had come up "empty." (State's Lodging A-3, pp. 56-57.)

But the Idaho Supreme Court found that Carr had apparently devised a strategy – albeit a "risky" one – to acknowledge the seriousness of the crime, offer  Petitioner's remorse, and to ask the trial court for mercy without attempting to explain Petitioner's background or the events in a more favorable light. Carr had also previously negotiated a plea bargain with the prosecutor that resulted in the dismissal of one criminal count and a sentencing recommendation of 25 years to life. Given the strength of the State's case, Petitioner's counsel did not have many options available to him, and regardless whether Carr may have committed errors in putting his supposed strategy into action, the state

**MEMORANDUM DECISION AND ORDER - 11**

court reasonably determined that he had not entirely abandoned Petitioner such that prejudice must be presumed under the *Cronic* rule.

Accordingly, the state court's opinion was not an unreasonable conclusion in light of the record developed and given the controlling case law from the United States Supreme Court. Petitioner is not eligible for habeas relief under 28 U.S.C. § 2254(d) on the remaining portion of Claim 1.

**2.    Pleading Guilty Under the Influence of Psychotropic Medication – Claim 3**

Petitioner next asserts that his guilty plea was involuntary because he was under the influence of medication when he entered his plea and because his counsel was ineffective in allowing Petitioner to plead guilty in his confused mental state. This claim contains a due process component under the Fourteenth Amendment (involuntary guilty plea) and a claim of ineffective assistance of counsel under the Sixth Amendment (counsel's action or inaction). The Fourteenth Amendment aspect of the claim was fairly presented in state court and the Idaho Supreme Court issued a ruling on its merits, but it did not decide a Sixth Amendment claim. This Court previously reserved its ruling on whether the Sixth Amendment portion of the claim was procedurally defaulted, but now finds that it is unnecessary to resolve that question because the claim fails under *de novo* review.

**A.    *Involuntary Guilty Plea***

To comply with the due process clause of the Fourteenth Amendment, a defendant's decision to change his or her plea to guilty must be knowing, intelligent, and

**MEMORANDUM DECISION AND ORDER - 12**

voluntary guilty. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Voluntariness

depends upon a full understanding of the direct consequences of the plea. *Brady v. United*

*States*, 397 U.S. 742, 755 (1970).

Because a guilty plea necessarily entails the waiver of certain fundamental

constitutional rights, including the right to trial by jury, the right to cross-examination,

and the privilege against self-incrimination, the record must also affirmatively

demonstrate that the defendant relinquished these rights knowingly and voluntarily.

*Boykin v. Alabama*, 395 U.S. 238, 243 (1969). In addition, a defendant must be mentally

competent to enter a guilty plea, meaning that he or she must have the ability to make a

reasoned choice among the alternatives presented to him or her. *Godinez v. Moran*, 509

U.S. 389, 396 (1993).

Here, in rejecting Petitioner's due process claim, the Idaho Supreme Court first

found that Petitioner was mentally competent to enter his plea under *Godinez* because

there was "ample evidence that [Petitioner] had a rational understanding of the

proceedings and was competent to enter a guilty plea." (State's Lodging F-11, p. 10.)

Next, turning aside Petitioner's general claims of involuntariness, the court looked to the

transcript of the trial judge's exchange with Petitioner where the judge questioned

Petitioner about his medication and, based on her own observations, later remarked in the

post-conviction matter that Petitioner "exhibited no behavior that indicated an inability to

concentrate or an impairment of his motor or cognitive skills." (*Id*. at 12.) The Idaho

Supreme Court ultimately determined that "[i]n light of the discussion between

**MEMORANDUM DECISION AND ORDER - 13**

[Petitioner] and the district judge, [Petitioner's] allegation that he was on Thorazine and the documentation in the presentence report that [he] had been prescribed the psychotropic drug Compazine are insufficient to raise an issue of fact." (*Id*.) Relief was denied on that basis. (*Id*.)

The Idaho Supreme Court's conclusion was reasonable in light of the record before it. As noted by the state court, the transcript of the guilty plea hearing contains abundant evidence that Petitioner entered a guilty plea with his eyes open and an understanding of the consequences. Specifically, he told the trial judge that he had been prescribed medication at the jail, but he claimed that he was aware of "what was going on" at the hearing, that the medication did not interfere with his functioning, and that he was not having trouble understanding the proceedings. (State's Lodging F-11, p. 11.) Petitioner further informed the judge that he was aware that, by pleading guilty, he would be waiving his right to trial by jury, to cross-examination, and to his privilege against self-incrimination. (State's Lodging E-4, p. 9.) He responded affirmatively when the judge asked him whether he was "pleading guilty freely and voluntarily." (*Id*. at 10.) He was also was able to give a coherent factual basis for the crimes when prompted by the judge. (*Id*. at 10-12.) Against this weighty record a competent, knowing, and voluntary plea, Petitioner offered only his own unsubstantiated statements in his petition for post-conviction relief that his medication had caused him to be confused and disoriented. (State's Lodging E-1, pp. 6-7.) He did not provide any corroborating evidentiary support

**MEMORANDUM DECISION AND ORDER - 14**

for those statements, however, such as records, witness statements, or authoritative sources on the effect of the drugs that he was allegedly taking.

Relying on *Lopez v. United States*, 439 F.2d 997 (9th Cir. 1971), and *Dziurgot v. Luther*, 897 F.2d 1222 (1st Cir. 1990), Petitioner argues that he was nonetheless entitled to an evidentiary hearing in state court to develop the evidence that would prove his mental incompetency claim. Using these cases, Petitioner is essentially challenging the adequacy of the state court's factfinding process, but his reliance is misplaced, as both cases address the need for hearings under a more lenient standard of review for federal post-conviction cases brought under 28 U.S.C. § 2255. Unlike a § 2255 proceeding, this Court may not "second-guess a state court's fact-finding process" in a § 2254 case unless it determines "that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (2004). This Court cannot say that the state court acted unreasonably in finding Petitioner's after-the-fact and general statements insufficient to go forward on this issue given the strong evidentiary record of a knowing, voluntary, and intelligent plea that had already been established. Its decision was neither contrary to or involved an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination in light of the facts presented.

### B.   *Ineffective Assistance of Counsel*

In a related subclaim, Petitioner asserts that he was deprived of his Sixth Amendment right to the effective assistance of counsel because Carr failed to prevent him

**MEMORANDUM DECISION AND ORDER - 15**

from pleading guilty in his confused state of mind. Reviewing this issue *de novo*, the Court finds that it lacks merit.

The Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings, which includes the plea bargaining process and the entry of a guilty plea. *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012). Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). That is, the defendant must show that his counsel's actions fell below an objective standard of reasonableness and that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). Prejudice in the guilty plea context means that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.

As with the last claim, the transcript of the guilty plea hearing provides a strong counterweight to Petitioner's allegations regarding his mental state at the time. At the hearing, the trial judge asked Petitioner whether anyone had promised him that she "would be easy on him" if he pled guilty, or had threatened him to plead guilty, and he responded "no." (State's Lodging E-4, p. 6.) She specifically asked him about his interaction with his attorney, and Petitioner stated that he had had enough time to discuss the case with Carr – who he admitted had informed him of his "rights and defenses" – and that he was satisfied with Carr's representation. (*Id*. at 9.) When the judge asked

**MEMORANDUM DECISION AND ORDER - 16**

Petitioner whether his "medications affect your ability to know what's going on," he replied, "[n]o, I know what's going on." (*Id*. at 7.)

Petitioner thus provided logical and coherent answers that tracked the judge's questions, and he has offered nothing substantial to suggest that the transcript of the colloquy is misleading or inaccurate, or that might otherwise undermine the trial judge's later finding, based on her personal observation, that "nothing indicated an impaired ability to enter a knowing, intelligent, and voluntary plea." (State's Lodging E-2, p. 253.) Moreover, aside from Petitioner's vague assertion that Carr was aware that he was taking medication, he has not pointed to any evidence that a reasonable attorney in Carr's position would have had serious doubts about his client's mental fitness to enter a knowing and voluntary guilty plea.

This subclaim lacks specific and sufficient factual allegations that, if proven true, would establish that Carr's failure to raise Petitioner's mental state as an issue fell outside the wide range of objectively reasonable attorney performance under the circumstances. As a result, the claim fails on the first part of the *Strickland* test.

## CERTIFICATE OF APPEALABILITY

In the event Petitioner files a timely notice of appeal, the Court must on its own initiative has evaluated this case for suitability of a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases.

A habeas petitioner cannot appeal unless a COA has issued. 28 U.S.C. § 2253. A COA may issue only when the petitioner "has made a substantial showing of the denial of

**MEMORANDUM DECISION AND ORDER - 17**

a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

This Court does not believe that reasonable jurists would debate its determination that Petitioner is not entitled to habeas relief on the merits of the non-dismissed portion of Claim 1 and Claim 3. The Court has also reviewed its previous Memorandum Decision and Order dismissing the remainder of Claim 1 as procedurally defaulted, in addition to Claims 2, 4, 5, 6, 7, and 8, and it finds nothing within that decision that would be reasonably debatable on appeal. (Dkt. 34.) The Court will not issue a COA in this case, though Petitioner is advised that he may still seek one in the Ninth Circuit Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and Local Ninth Circuit Rule 22-1. To do so, he must first file a timely notice of appeal in this Court.

## ORDER

**IT IS ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Dkt. 3) is DISMISSED.

2.  Petitioner's Motion Requesting Status of Case and/or to Compel the Court to Render a Final Decision (Dkt. 41) is MOOT.

3.  A certificate of appealabilty will not issue in this case.  If Petitioner files a timely notice of appeal, and not until such time, the Clerk of Court shall

forward a copy of the notice of appeal, together with this Order, to the

Ninth Circuit Court of Appeals. The district court's file in this case is

available for review online at www.id.uscourts.gov.

DATED: **January 18, 2013**

Honorable Edward J. Lodge
U. S. District Judge