UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|   |   |
|---|---|
| KENNETH WORKMAN,<br><br>     Petitioner,<br><br> v.<br><br>RANDY BLADES and LAWRENCE WASDEN,<br><br>     Respondents. | Case No. 1:08-cv-00052-EJL<br><br>**MEMORANDUM DECISION AND ORDER RE: POST-JUDGMENT MOTIONS** |

Previously in this habeas corpus matter, the Court denied relief and dismissed Petitioner Kenneth Workman's Petition for Writ of Habeas Corpus with prejudice. (Dkt. 43, 44.) The Court denied a certificate of appealability. (Dkt. 43.)

After judgment was entered, Petitioner filed a "Motion to Reconsider Dismissal of Writ of Habeas Corpus re: Judgment," a "Motion to Stay Proceedings and/or to Allow Petitioner to Present a Successive Petition Upon the Finalization of His Motion for Rule 35 in the Lower State Courts," and a "Motion to Allow Petitioner to Proceed under *Martinez v. Ryan*." (Dkts. 45, 55, 56.)

These matters are now fully briefed. The Court finds that the decisional process would not be aided by oral argument. D. Idaho L. Civ. R. 7.1(d). For the reasons set forth below, the Court enters the following Order denying Petitioner's motions.

# BACKGROUND

In 2001, Petitioner's vehicle veered off Interstate 84 near Boise and hit two pickup trucks that were parked on the side of the road. (State's Lodging F-11, p. 1.) Two people who were standing between the trucks were seriously injured— the female victim was thrown into traffic and broke nearly every major bone in her body, and the male victim (a firefighter who was the female victim's son-in-law) had one leg severed below the knee and the other leg crushed between the vehicles. (*Id.*) It was later determined that Petitioner had high levels of heroin, amphetamine, and methadone in his blood at the time of the crash. (*Id.*)

The State charged Petitioner with two counts of aggravated driving under the influence (DUI) and one count of possession of heroin. (State's Lodging A-1, pp. 28-29.) The State also filed an Information Part II, alleging that Petitioner was a persistent violator of the law based on two prior felony convictions. (*Id*. at 38-39.) Petitioner and the State entered into a plea agreement where Petitioner agreed to plead guilty to the two counts of aggravated DUI and the persistent violator charge, and the prosecutor agreed to dismiss the possession count and to recommend life in prison with 25 years fixed. (State's Lodging A-3, p. 1.)

At the sentencing hearing, the male victim, his spouse, and the spouse of the female victim (hereafter collectively referred to as "victims") gave oral victim impact statements about how severely the incident had affected them. (State's Lodging A-3, pp. 33-38.) The prosecutor recommended a sentence of life in prison with 25 years fixed. The

prosecutor focused her argument on Petitioner's lengthy criminal history, his previous failed attempts at rehabilitation, and the aggravated nature of the offense. (*Id*. at 39-59.)

In response, Petitioner's trial counsel, D.C. Carr, agreed with the prosecution's characterization of the facts in many respects. Mr. Carr called the crime "god-awful," and said he had nothing to offer in mitigation. He nevertheless pointed to a positive argument—the restitution factor. He said that the only thing his client could offer in mitigation would be restitution, and he acknowledged that money would not be able to make the victims whole. Mr. Carr said that it was difficult to ask the court to reduce the sentence proposed by the prosecutor, but implied that the sooner Petitioner was paroled, the sooner he could begin to pay the restitution to the victims. (*Id*. at 56-58.)

Counsel asked the court for mercy, but referenced how difficult that was to do in light of the victims' testimony about the devastating effect of the crimes on their lives. Counsel stated that Petitioner had wanted to plead guilty right away to take responsibility for the crime. Counsel said, "Ken is truly, truly, truly sorry, but I know saying that, that sounds empty also." He ended with the statement: "I'm going to let him address the court, and I just ask for some sort of mercy for my client." (*Id.* at 58-59.)

Petitioner then addressed the court, profusely apologizing and stating that he wished he could turn back time. He asked for forgiveness, and acknowledged the difficulty of the victims' lives. (*Id*. at 59.)

The sentencing court then summarized the facts as follows:

> This is an absolutely horrendous crime. Habitual felon with a 30-year drug addiction, with no license, no insurance, heavily under the influence of heroin and methamphetamine, drove off a highway, struck two people, causing them horrific, life-threatening injuries, and we are here.
>
> He didn't mean it to happen, but there are many people in this courtroom who will deal forever with the consequences of his choice to continue using drugs and to continue to drive, even though he had been told time after time not to drive, even though he is time after time incarcerated from drug use, even though time after time he has been given chances for rehabilitation with his drug use.

(*Id*. at 59-60.)

The transcript reflects that, near the end of the hearing, the sentencing judge stated, "So I'm going to follow the plea bargain agreement." (State's Lodging A-3, p. 66.) In the next breath, the sentencing judge disregarded the prosecution's recommendation of 25 years to life and sentenced Petitioner to a fixed term of life in prison without the possibility of parole. (State's Lodging A-1, pp. 60-61.) In doing so, the court cited Petitioner's extensive criminal history, long-time drug addiction, previous failures at rehabilitation, and the need to protect society. (State's Lodging A-3, pp. 59-66.)

The court particularly made use of the persistent violator statute: "[T]his is a case where the persistent violator statute should be used by the courts to say that particularly when somebody comes back before the courts over and over again and then commits a worse offense, that the persistent violator statute enhancement of the sentence will be used to its maximum." (*Id*., p. 65.)

The Judgment of Conviction specified:

> ON COUNT I: With the enhancement provided by I.C. § 19-2514, (Persistent Violator) to a fixed and determinate period of life;

> ON COUNT II: With the enhancement provided by I.C. § 19-2514, (Persistent Violator) to a fixed and determinate period of life, to run concurrent with Count I.

(State's Lodging A-1, p. 51.)

After extensive appellate and post-conviction proceedings, Petitioner sought federal habeas corpus relief in this action. (Dkt. 3.) In the Amended Petition and the original Petition, Petitioner raised the following eight claims for relief:

> (1) ineffective assistance of counsel because his trial counsel failed to subject the prosecution's case to meaningful adversarial testing and committed other errors;

> (2) denial of due process of law because of the trial court's failure to advise Petitioner of the maximum sentences that could be imposed;

> (3) ineffective assistance of counsel and the denial of due process of law because Petitioner entered his plea of guilty while under the influence of psychotropic medication;

> (4) a violation of the Eighth Amendment's prohibition on cruel and unusual punishment because the fixed life sentences are grossly disproportionate to the crimes committed;

> (5) a violation of Petitioner's right against twice being placed in jeopardy because he was convicted for two counts of aggravated DUI based on one incident;

> (6) ineffective assistance of counsel on direct appeal;

> (7) cruel and unusual punishment, and violation of due process, because of a burdensome restitution order; and

(8) the denial of due process because Petitioner was deprived of the legal resources mandated by statute to prepare and present timely claims in his post-conviction proceedings.

(Dkts. 3, 17.)

The Court granted Respondent's Motion for Partial Summary Dismissal, concluding that the *Strickland* theory of Claim 1 and Claims 2, 4, 5, 6, and 7 in the Petition for Writ of Habeas Corpus were procedurally defaulted. The Court also concluded that Claim 8 failed to state a cognizable federal habeas corpus claim. (Dkt. 34.) After full briefing, the Court denied the remaining claims on the merits: the *Cronic* theory of Claim 1 and Claim 3. (Dkt. 43.) Petitioner now asks the Court to reconsider its decision on Claims 1 through 5.

## REVIEW OF MOTION FOR RECONSIDERATION, INCLUDING ALL CLAIMS ADDRESSED ON THE MERITS

### 1.    Standard of Law

Petitioner brings his Motion for Reconsideration under Federal Rule of Civil Procedure 60(b), but filed it within 28 days after entry of the Order and Judgment dismissing his Petition, bringing the motion within the time frame for a Rule 59(e) motion. The Court will treat the motion under Rule 59(e). *See American Ironworkers & Erectors, Inc. v. North American Construction Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). A Rule 59(e) motion should not be granted unless there is a showing of highly unusual circumstances, such as when the district court is presented with newly discovered evidence, the court committed clear error, there is an intervening change in controlling

law, or the decision was "manifestly unjust." *Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011).

## 2.     Discussion of Claim 1(a)--Abandonment by Counsel

The Court denied Petitioner's claim that he was deprived of his Sixth Amendment right to the effective assistance of counsel under *United States v. Cronic*, 466 U.S. 648 (1984), because his counsel failed to subject the prosecution's case to meaningful adversarial testing, committed numerous cumulative errors, and abandoned petitioner at sentencing by presenting no mitigating defense. (Dkt. 3, p. 2.)

In the Motion for Reconsideration, Petitioner argues that the Court committed clear error in denying his claim, because the cumulative errors committed by trial counsel D.C. Carr rise to the level of a *Cronic* violation,[1] and because the state court decisions rest on arbitrary reasoning. Particularly, Petitioner contends that the state district court arbitrarily determined that trial counsel was following a strategy at sentencing of acknowledging the seriousness of Petitioner's offense and asking for mercy. Petitioner argues that the court should not have reached that conclusion without having an affidavit or testimony from Mr. Carr to show that his course of conduct was actually the result of strategy.

In *Cronic*, the Supreme Court held that a defendant may be relieved of the burden to show actual prejudice in limited situations, including the failure of counsel to subject

---

[1] Petitioner also argues that he has shown prejudice under *Strickland*. Because that portion of the claim was determined to be procedurally defaulted, and is not properly the subject of the Motion for Reconsideration, the Court will address it below when addressing Plaintiff's *Martinez v. Ryan* motion.

the prosecution's case to "meaningful adversarial testing. 466 U.S. at 659-62. In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court held that a petitioner must show that the failure to test the prosecution's case as an adversary was a "complete" failure rather than a partial failure, meaning that counsel "*entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Id*. at 697 (citing *Cronic*, 466 U.S. at 659).

In *Bell*, a death-sentenced prisoner argued that his counsel's failure to present any mitigating evidence on his behalf at sentencing, coupled with counsel's choice not to give a closing argument, amounted to an abdication of his role as an advocate for the defense. 535 U.S. at 696-97. The Supreme Court disagreed, noting that counsel's alleged errors did not show a *complete failure* to test the state's case, and were instead "plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components." *Id*. at 697-98 (citations omitted). *Strickland*, not *Cronic*, governed the claim. *Id*.

Petitioner again makes the same argument the Court has already rejected. Mr. Carr did not completely abandon Petitioner. While Mr. Carr did not present any evidence other than Petitioner's allocution at sentencing, he did offer the restitution argument as mitigation, and he did present a closing argument centered around a strategic theme. Mr. Carr also provided representation prior to sentencing. Reasonable jurists could disagree whether Mr. Carr's performance constituted a complete failure to test the prosecution's case, under the standard articulated in *Harrington v. Richter*, 131 S.Ct. 770 (2011); in fact, most would agree with the Idaho Supreme Court that Petitioner has presented facts

that implicate *Strickland*, rather than *Cronic*. Therefore, relief is unwarranted on the *Cronic* claim.

**3.     Discussion of Claim 2—-Failure to Advise Petitioner of Maximum Penalty**

Petitioner asserts that this Court erred in not finding that he made a substantial showing that the district court failed to inform Petitioner that he could be subjected to a fixed life sentence, which rendered his guilty plea involuntary. Though Respondent argued this claim was procedurally defaulted, the Court determined that it was simpler to address the merits of the claim.

The law applicable at the time the state courts decided Petitioner's claim provided that, to comport with due process of law, a defendant's guilty plea must be entered voluntarily and with an awareness of the direct consequences of the plea. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The direct consequences include the maximum possible sentence that the defendant could face.[2]

First, Petitioner was informed at his arraignment that an aggravated DUI charge carries a maximum sentence of ten years in prison, but that the persistent violator enhancement "adds a sentence of five years fixed to life for any sentence which you might receive for the underlying felonies." (State's Exhibit A-2, p. 5.) Second, Petitioner entered a guilty plea under an agreement with the State that it would recommend a life

---

[2] The United States Supreme Court recently backed away from a direct/collateral consequences type of analysis in *Padilla v. Kentucky*, 559 U.S. 356 (2010), in the context of determining whether a defendant should have been advised of the consequence of deportation before pleading guilty. However, that case is inapplicable here because it was issued after Petitioner's case, it did not address a fixed life sentence, and it was determined to be nonretroactive. *See Chaidez v. U.S.*, 133 S.Ct. 1103 (2013).

sentence with 25 years fixed. Petitioner indicated that he understood the nature of the plea agreement. (State's Lodging A-3, p. 3.) Third, at the change of plea hearing, the Court asked Petitioner, "And, you understand, the court can do anything up to the maximum if that's reasonable under the circumstances of the case?" Petitioner answered, "Yes, ma'am." Fourth, at the sentencing hearing, the court again confirmed that the State would ask for life with 25 years fixed. (*Id*. at 18.) Therefore, the record discloses that Petitioner was informed and aware that he faced a maximum potential sentence of life in prison.

Petitioner contests the fact that no one explained specifically that life could mean life without the possibility of parole. The Court reiterates that parole eligibility is not a fact that is constitutionally significant in this context. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("[w]e have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary . . ."); *see also United States v. Roberts*, 5 F.3d 365, 368 (9th Cir. 1993) (holding that the district court did not violate Fed. R. Crim. P. 11 by failing to advise defendant of his parole ineligibility); *Lambert v. Blodgett*, 393 F.3d 943 n.26 (9th Cir. 2004) (citing *Hill*).

Upon reconsideration, the Court concludes that, either under AEDPA, requiring the Court to apply only United States Supreme Court precedent, or under a *de novo* standard of review, using Supreme Court and Ninth Circuit precedent, Petitioner's claim fails. Petitioner knew the prosecution was seeking a life sentence, knew he was pleading guilty to a sentencing enhancement for which the maximum sentence was life, and knew

that the court could sentence him to the maximum sentence permitted by the law. That is all the law requires.

**4.      Discussion of Claim 3—Involuntary Guilty Plea Based on Psychotropic Medication**

Petitioner's particular allegation underlying Claim 3 is that the prescription medication he was taking at the time of his guilty plea caused him to be "confused, disoriented, and his motor skills, thinking & concentration, greatly impared [sic]." (State's Lodging E-1, p. 7.) On post-conviction review, he alleged that he "felt confused and as if he was in a cloud," and "that he was left without rational thought and was unable to grasp the reality of the situation." (*Id*.) He further argued that the very fact that he entered into a plea agreement in exchange for "25 years fixed to life with persistent violator, which amounts to no plea bargain at all" is an indication that he "was not thinking clearly but was in a drug induced state of mind." (*Id*.)

Petitioner asserts that this Court erred by relying solely on the colloquy and the personal observations of the state district court to determine that Petitioner's plea was voluntary. Petitioner argues that the state district court was required to hold an evidentiary hearing on the disputed factual issue of whether Petitioner's medication, Compazine, prescribed for depression symptoms (State's Lodging E-2, p. 253), affected his ability to understand the gravity of the charges and enter into a plea. This Court concluded that, either as a due process claim under the Fourteenth Amendment (involuntary guilty plea) under AEDPA review, or an ineffective assistance of counsel claim under the Sixth

Amendment (counsel's action or inaction) under *de novo* review, the claim did not warrant relief.

The Court again concludes that the entire state court record reflects that Petitioner conducted himself in a manner throughout the proceedings that demonstrated he was able to understand the nature of the proceedings. The record does not reflect that, at any time, Petitioner's motor skills were impaired, or that he was confused or disoriented in court.

Further, the state district judge's personal observations were not from a single, limited personal appearance, but they occurred over the course of eight months, from the arraignment in December 2001, through the change-of-plea hearing in May 2002, to the sentencing hearing in August 2002.

Contemporaneous evidence is the best indicator of one's mental state at a certain time period, and Petitioner has produced nothing, contemporaneous or otherwise, to support his allegations, other than a few vague descriptions of how he felt. Petitioner has not come forward with any jail records or medical reports showing that he was suffering from any mental or physical deficiency that impaired his ability to enter into a voluntary plea. The record does not reflect that Petitioner's lawyer, doctor, or jailors observed or reported unusual behavior or communications that would have indicated an inability on Petitioner's part to enter into a voluntary plea because Petitioner's thinking was "greatly impaired."

The record strongly supports the Idaho Supreme Court's decision. Nothing in the record indicates that an evidentiary hearing was necessary for the state district court to

resolve this claim. Reconsideration of the denial of this claim is unwarranted, except to the extent that the Court considers the Sixth Amendment claim under *Martinez v. Ryan*, below.

**5.      Discussion of Claim 4—Cruel and Unusual Punishment**

Petitioner contends that the Court erred in not giving him relief on his claim that he has been subjected to cruel and unusual punishment, in violation of the Eighth Amendment, because two fixed life sentences are "grossly disproportionate to the offense committed" (Dkt. 3, p. 3) and because no other person in Idaho has received a similar sentence for an "unfortunate and unintentional automobile accident." (Dkt. 45, p. 4-5.)

Petitioner's aggravated DUI crimes occurred after an extensive history of committing crimes, a long-time drug addiction, and several attempts at rehabilitation. Despite his history, Petitioner chose to use drugs and then get behind the wheel of a car. The effects of his choices were devastating to the victims and their families. There is no indication from Petitioner's history that he would not engage in this behavior again and again unless the State took action to stop him, permanently. The sentencing court aptly pointed out that the persistent violator statute was designed for just such an instance, and the judgment of conviction expressly states that the sentence encompassed the crime *and* the persistent violator enhancement.

Petitioner's life sentence without the possibility of parole cannot be deemed disproportionate when compared to the heavy sentences for the seemingly light offenses in cases of precedent. *See Rummel v. Estelle*, 445 U.S. 263, 274 n.11 (1980) (sentence of

life with the possibility of parole not unconstitutional under a recidivism statue where the underlying offenses were fraudulent use of a credit card to obtain $80 in goods and services, passing a forged check for $28.36, and obtaining $120.75 by false pretenses; the Court cited an example of a disproportionate sentence as "if a legislature made overtime parking a felony punishable by life imprisonment"); *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (the Court affirmed a Michigan court judgment sentencing the defendant to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine); *Lockyer v. Andrade*, 538 U.S. 63 (2003) (two consecutive sentences of 25 years to life in prison for a "third strike" provision of state law for stealing $150 worth of videotapes did not violate the gross disproportionality principle and did not warrant habeas corpus relief); *Ewing v. California*, 538 U.S. 11 (2003) (same result for inmate convicted of felony grand theft for stealing three golf clubs, worth $399 apiece). This claim does not warrant a different outcome on reconsideration.

**6.     Discussion of Claim 5—Double Jeopardy**

The Court found that this claim was procedurally defaulted and did not address it on the merits. Therefore, Petitioner's argument on reconsideration must address the threshold issue—procedural default—before he can argue that his claim has merit. Because no grounds for application of the cause and prejudice or miscarriage of justice exceptions are apparent from the record, this claim does not warrant reconsideration.

**7.     Conclusion**

For the foregoing reasons, the Court concludes that Petitioner is not entitled to

relief under Rule 59(e). Therefore, his Motion for Reconsideration will be denied.

## MOTION TO PROCEED ON DEFAULTED
## CLAIMS UNDER *MARTINEZ V. RYAN*

**1.      Standard of Law**

The only claim to which *Martinez v. Ryan* can be applied is the *Strickland* portion

of the ineffective assistance of trial counsel in Claim 1.[3] *Martinez* is not applicable to

Claim 5, double jeopardy, or Claim 7, an arbitrary restitution order, and there is no other

basis to reconsider their procedural default at this stage of proceedings.

**2.      Discussion of Claim 1: Ineffective Assistance of Counsel Claims Under**
**_Strickland v. Washington_**

A.      <u>Petitioner's Contentions</u>

Petitioner contends that he was deprived of his Sixth Amendment right to the

effective assistance of counsel because his counsel failed to subject the prosecution's case

to meaningful adversarial testing, committed numerous cumulative errors, and presented

no mitigating defense at sentencing, violating the standards of *Strickland v. Washington*,

466 U.S. 688 (1984). (Dkt. 3, pp. 7-12.) Petitioner asserts that the *Martinez* exception

should permit him to proceed to an evidentiary hearing.

Because Petitioner relied only on *Cronic* and not *Strickland* in the state court

proceedings, the Court considered the *Strickland* claim procedurally defaulted. One of the

key differences between these two types of claims is that Petitioner did not argue to the

---

[3] Claim 6, which is a claim of ineffective assistance of direct appeal counsel was addressed on the merits, and Petitioner is not contesting its denial in his Motion to Reconsider.

state courts that he was actually prejudiced by the alleged errors, but argued only that prejudice should be presumed because his counsel abandoned him.

B.    *Martinez v. Ryan*

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies for a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered "procedurally defaulted." *Coleman,* 501 U.S. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. at 488. To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Errors of counsel made on post-conviction review that cause the default of other claims generally *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). This rule arises from the principle that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

The case of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), established a limited exception to the *Coleman* rule. *Id*. at 1319. In *Martinez*, the court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. The *Martinez* Court explained that the limited exception was created "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*. at 1318.

The *Martinez v. Ryan* exception is applicable to permit the district court to hear procedurally defaulted claims of ineffective assistance of trial counsel, *id*. at 1320, and ineffective assistance of direct appeal counsel. *See Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013). The exception has not been extended to other types of claims. *See Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (*Martinez* not applicable to a defaulted *Brady* claim).

In *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the United States Supreme Court clarified that the *Martinez/Coleman* "cause" test consists of four necessary prongs. The failure to meet any prong means that the *Martinez* exception is unavailable. *See Martinez*, 132 S.Ct. at 1319.

      (1)    *First Prong of* Martinez/Coleman *"Cause"—Substantial Ineffective Assistance of Counsel Claim*

First, a petitioner must bring forward some facts demonstrating that his ineffective assistance of trial or direct appeal counsel (IAC) claim is substantial. The United States Supreme Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S.Ct. at 1318 (comparing the standard for certificates of appealability from *Miller–El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether a claim is substantial requires a federal district court to examine both prongs of an IAC claim under *Strickland v. Washington*, 466 U.S. 668 (1984)—deficient performance and prejudice. As to deficient performance, *Strickland*

emphasizes that there is a strong presumption that an attorney performed within the wide range of professional competence; the attorney's performance will be deemed deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Strickland*, 466 U.S. at 689-90.

Prejudice under *Strickland* means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id*.

These standards from *Strickland* for determining deficient performance and prejudice, are, of course, the standards for an eventual review of the merits of the IAC claim. The first *Martinez* prong is not the same as a merits review, but, as the *Martinez* Court explained, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S.Ct. at 1318-19 (comparing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Therefore, a court may conclude that a claim is substantial when a petitioner has shown that "resolution" of the merits of the *Strickland* claim would be "debatable among jurists of reason," or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal citation and punctuation omitted).

(2)    *Second Prong of* Martinez/Coleman *"Cause"—Post-Conviction Review Counsel is Constitutionally Ineffective*

Second, a petitioner must show that he had no counsel on initial post-conviction review, or that post-conviction review (PCR) counsel was "ineffective under the standards of *Strickland,*" meaning deficient performance and a reasonable probability of prejudice caused by the deficient performance. *Martinez*, 132 S.Ct. at 1318; *see Strickland,* 466 U.S. at 694, 700.

### a.    Deficient Performance

Not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez.* If the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards," the PCR attorney's performance does not constitute "cause." 132 S.Ct. at 1319.

### b.    Prejudice

As to prejudice, the petitioner must show that, absent PCR counsel's deficient performance, the result of the post-conviction proceedings would have been different. *Clabourne v. Ryan*, 745 F.3d 362, 376-77 (9th Cir. 2014) (cumulating all opinions from *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) (en banc) (plurality opinion). That determination "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* at 377-78.

### c. No Additional *Coleman* "Actual Prejudice" Showing is Required

Once a petitioner has met Prong 1, a showing of substantiality of the merits of the underlying IAC claim (deficient performance of trial or direct appeal counsel plus prejudice), and Prong 2, that PCR was ineffective (deficient performance plus prejudice in the PCR action), *Coleman* "cause" is met. *Clabourne*, 745 F.3d at 378. *Coleman* "actual prejudice" is met by a showing of substantiality of the merits of the underlying IAC claim (Prong 1 of the "cause" test). *Id*. at 377.

(3) *Prong 3*

Prong 3 of the *Martinez/Coleman* test is that the state collateral review proceeding must have been the "initial" post-conviction review proceeding where the IAC claim could have been raised. *Trevino*, 133 S.Ct. at 1918 (citing *Martinez*, 132 S.Ct. at 1318–19, 1320–21). In other words, the post-conviction proceeding must have been "the equivalent of a prisoner's direct appeal" for the IAC claim. *Martinez*, 132 S.Ct. at 1317. A petitioner may not use as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 132 S.Ct. at 1320.

(4) *Prong 4*

Prong 4 of the *Martinez/Coleman* test is that state law must require (by law or by reason of design and operation) that an ineffective assistance of trial counsel or appellate counsel claim be raised in an initial-review collateral proceeding. *Trevino*, 133 S.Ct. at

1918, 1921. In Idaho, the post-conviction setting is the "preferred forum for bringing

claims of ineffective assistance of counsel," although in limited instances such claims

may be brought on direct appeal "on purported errors that arose during the trial, as shown

on the record" (as opposed to matters arising outside the record). *Matthews v. State*, 839

P.2d 1215, 1220 (Idaho 1992).

C.    Analysis

Petitioner presented a *Strickland* claim in his pro se post-conviction petition.

(State's Lodging E-1, pp. 10-13.) The state district court did not appoint counsel and

summarily dismissed the claims. Counsel was appointed on appeal.

Petitioner's deficient counsel claim on appeal clearly was intended to focus only

on the *Cronic* theory. The Idaho Supreme Court rejected application of *Cronic* to

Petitioner's facts, concluding:

> Even if an attorney's actions constituted errors, rather than risky
> though permissible strategy decisions, the actions would still be subject to
> evaluation under *Strickland*, not *Cronic*. The attorney's actions do not
> constitute an entire failure to subject the prosecution's case to meaningful
> testing, as required by *Cronic*. Thus, the district court correctly evaluated
> Workman's claims for ineffective assistance of counsel under *Strickland*.
> On appeal, Workman does not challenge the district court's finding that he
> failed to establish *Strickland*'s second prong, prejudice. We therefore affirm
> the district court's dismissal of Workman's claims for ineffective assistance
> of counsel.

(State's Lodging F-11, p. 10.)

This language presents an interesting procedural issue. In its original Order, the

Court determined that the *Strickland* claim was procedurally defaulted because Petitioner

**MEMORANDUM DECISION AND ORDER - 22**

did not raise that claim on appeal. (Dkt. 34.) Upon a second review, the Court still finds the most reasonable reading of the opinion is that the *Strickland* claim is procedurally defaulted, because Petitioner did not present any *Strickland* claim on appeal. Though couched in "merits denial" terms, the Idaho Supreme Court's discussion about *Strickland* was for the purpose of rejecting the *Cronic* claim (not for the purpose of deciding a "non-claim" on the merits). The decision merely acknowledged that the *default effect* of the failure to raise a *Strickland* claim was that the state district court's decision that *Strickland* was not violated would be affirmed.[4]

Respondent argues that the procedural default of Petitioner's claim was caused by post-conviction appellate counsel's failure to raise the claim on appeal, and, thus, the claim falls outside the *Martinez* exception (Prong 3), which applies only to *initial* post-conviction counsel's omissions. While appellate counsel's decision to omit the claim on appeal is a secondary cause of the procedural default, the Court concludes that the primary cause was the failure of Petitioner to support the claim with any facts in his initial pro se post-conviction petition, because that act effectively ties the hands of appellate

---

[4] In the alternative, if the Idaho Supreme Court opinion is construed as a *sua sponte* decision on *Strickland*, the claim could be considered "adjudicated on the merits." If so, the Court would then consider whether the state courts' actions in deciding the claim without an evidentiary hearing at the state district court level and without any briefing on the merits at the state appellate court level amount to an unreasonable finding of fact under § 2254(d)(2). *See Taylor v. Maddox*, 366 F.3d 992, 1000-01 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir.2014). Assuming, without deciding, that the fact finding was unreasonable, this Court then would be free to analyze the claim *de novo*, rather than under the doubly-deferential standard of § 2254(d)(1). The Court concludes that, because Petitioner cannot show prejudice resulting from any deficient performance of his counsel, as the Court will explain in the body of the Order, Petitioner still would not be able to prevail under the *de novo* or § 2254(d)(1) standards of review.

counsel as to the lack of appealability of the claim. Failing to appoint counsel for the initial post-conviction proceeding falls under the *Martinez* exception, and, thus, the Court concludes that it can be applied here, not withstanding the secondary cause of Petitioner's procedural default. Accordingly, the Court will now analyze Petitioner's *Martinez* argument to excuse the procedural default of the claim.

The fact that no counsel was appointed for Petitioner at the initial post-conviction stage means that Petitioner is relieved from the requirement of meeting Prong 2 (ineffectiveness of initial post-conviction review counsel). He must still show *Coleman* "prejudice" by showing he has met Prong 1, whether any facts demonstrate that his ineffective assistance of counsel claim is substantial. Case law instructs that a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Martinez*, 132 S.Ct. at 1319.

Petitioner's ineffectiveness claims were aimed at several different stages of the criminal proceedings.

### (1) *Guilty Plea*

As discussed above, Petitioner alleges that his guilty plea was invalid due to Petitioner being under the influence of mind-altering drugs. He asserts this claim can be resolved under *Martinez* only with an evidentiary hearing. The Idaho Supreme Court decided this Fourteenth Amendment claim on the merits as to the *state district court's error*, as did this Court. Petitioner did not present this claim as a Sixth Amendment *ineffective assistance of trial counsel* claim to the state courts, but attempted to present it

for the first time in this case. The Court denied this claim on the merits using a *de novo* review standard, but the Court also conducts a *Martinez* review, determining whether Petitioner additionally should have the opportunity to bring additional evidence upon *de novo* review.

Under Prong 1(a), to state a substantial claim, Petitioner must bring forward some factual support to show that the claim has some merit, such that he was prejudiced by his trial counsel's failure to raise the involuntary plea issue at sentencing. Petitioner has failed to do that, both at the post-conviction level and at the federal habeas corpus level of proceedings. It is not too much to require Petitioner, who was proceeding pro se, to have produced a contemporaneous jail or medical record showing that he reported to his medical provider that he was suffering from disorientation, confusion, impairment of his motor skills, or impairment of his thinking or concentration, or an affidavit from a witness so attesting. The record to date reflects only that he suffered from some depression symptoms, for which he was provided a prescription medication. Petitioner did not provide any examples of being confused or disoriented in any other part of his life during that time period. The terms of the plea agreement are not so outrageous that they reflect that no rational person would have entered into the plea agreement, as Petitioner argues. Even as a pro se litigant, Petitioner could have completed the fairly simple tasks of providing a few records or affidavits to show that his claim had some merit.

(2)    *Sentencing—No Mitigation Evidence*

As to Prong 1(a), the Court concludes that Petitioner has failed to show that counsel's performance was so deficient that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The state district court pointed to the following mitigation arguments that counsel made and that the court actually considered when crafting the sentence: (1) Petitioner was "truly sorry for the crime," which was "remorse"; (2) Petitioner "had planned to plead guilty from the beginning," which was "taking responsibility" for the crimes; (3) "the sentence would have a general deterrent effect"; and (4) "the length of the sentence should be limited in order to allow [Petitioner] to begin paying restitution." (State's Lodging E-2, p. 262.) This argument may have been brief, but it was not constitutionally inadequate.

Another of Petitioner's arguments is that his counsel was deficient for failing to focus his argument on Petitioner's contention that he fell asleep at the wheel, and that he did not cause any intentional harm. However, it was uncontested that Petitioner did not intend to harm the victims. Such a focus would have minimized Petitioner's stance that he was willing to take responsibility for his actions, and it would have been detrimental to the overall defense theory, especially given that the first witness at sentencing was an expert who expounded on the types, amounts, and effects of the illegal drugs Petitioner had in his system at the time of the crash. (State's Lodging A-3, pp. 20-32.)

As to Prong 1(b), Petitioner has pointed to no additional mitigating facts or evidence that his counsel should have presented at sentencing. Thus, there is no reasonable probability of prejudice. Since the date of his conviction, Petitioner has had ample opportunity to notify the courts what more his counsel could have done. Bringing forward some mitigating facts from his personal history is a task that would have been within Petitioner's own scope of knowledge; therefore, doing so in a short and simple manner in his pro se post-conviction petition, or in any subsequent pro se filing, did not require appointment of counsel, as Petitioner contends.

(3)    *Sentencing—Failure to Argue for 10 Years or Less*

Petitioner argues that, during the communications with counsel about the plea agreement, Mr. Carr promised Petitioner he would argue for 10 years or less at the sentencing hearing. Mr. Carr did not make that argument, but essentially agreed with the State's recommendation of 25 years to life, stating, "I just can't argue against it," after hearing from the prosecutor and the victims. (State's Lodging A-3, p. 57.)

Under Prong 1(a), the Court reviews whether Mr. Carr's performance was deficient when he failed to argue for a sentence of 10 years or less. If Petitioner entered into the plea agreement because Mr. Carr said he would ask for 10 years or less, Mr. Carr should have done so. The Court will assume that this was deficient performance.[5]

_____

[5] Petitioner also asserts that he would not have pleaded guilty if he knew his counsel was not going to argue for 10 years or less. However, there is nothing in the record showing that Petitioner had any intention of going to trial, especially given the devastating evidence against him, including the expert witness testimony about the amount and type of drugs in his system at the time of the crash and the nature and extent of the victims' injuries. Therefore, as to any suggestion that Petitioner is making a different

Under Prong 1(b), the Court reviews whether there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Petitioner had two prior felonies and almost 40 misdemeanor convictions. (State's Lodging E-1, p. 140.) His drug abuse was a life-long habit. The record is very clear that the sentencing court believed that Petitioner could not be rehabilitated and that his continued presence in society was a great danger. The crime was horrendous, as the sentencing court described. Based on the entire record, the Court concludes that there is no possibility that the state court would have sentenced Petitioner to 10 years or less, regardless of whether Petitioner's counsel had made that recommendation.

(4)     *Sentencing—Failure to Object to Judge's Pronouncement*

Petitioner argues that the state district court made itself a party to the plea agreement by making the statement in court that "I'm going to follow the plea bargain agreement" (State's Lodging A-3, p. 66), but then it immediately breached the agreement by imposing a sentence of fixed life, rather than the sentence recommended by the prosecution. Petitioner asserts that Mr. Carr's failure to object to the breach was ineffective assistance. Petitioner argues, "[W]hat can be more prejudicial than to have his

---

ineffective assistance of counsel claim on these facts (unknowing and involuntary guilty plea), he has failed to provide evidence that he would have proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that a claim that a plea is not knowing and voluntary due to counsel's ineffective advice requires a showing of a reasonable probability that the defendant would not have pled guilty but for counsel's erroneous advice). In addition, had Petitioner chosen to put the victims through a trial and not taken responsibility for the crime, that would have been weighed against him at sentencing. Whether the sentence came via trial or guilty plea, the result would have been the same—the judge had the duty to protect society from Petitioner's repeated failures to control himself.  Thus, Petitioner is unable to meet the prejudice prong of *Strickland.*

attorney fail to object to the court[']s breach of the plea agreement and then allow his client to face dying in prison[?]" (Dkt. 45, p. 2.)

There is simply no showing of deficient performance under Prong 1(a). Nothing in the record reflects that the plea agreement was binding on the court, and so there was no reason for Petitioner's counsel to have objected. Even if the court *stated* that it was going to follow the *parties'* plea agreement, that statement did not legally bind the court to do so. In addition, the sentencing portion of the plea agreement was not an agreement for a particular sentence, but was an agreement only that each party was free to argue for a different sentence, with the upper limit of the prosecution's recommendation capped at 25 years to life. Therefore, Petitioner's argument that the court bound itself to a set of variable recommendations is nonsensical.

For the same reason, there is no prejudice under Prong 1(b). Neither is there any prejudice if the court simply misspoke, and Petitioner's counsel failed to ask the court to correct its misstatement. The hearing transcript shows that the court knew the prosecutor's recommendation was 25 years to life. The transcript also shows that the court clearly intended to sentence Petitioner to fixed life, regardless of the prosecutor's recommendation, with such statements as, "In my view, the sentence in the case reflects the need to warehouse the defendant," and "I see no purpose in allowing the defendant to be free again when he lets his drug addiction go to such a point that so many other lives are permanently affected." (State's Lodging A-3, pp. 65-66.) Counsel's interjection of an objection would not have changed the outcome of the sentencing hearing.

**MEMORANDUM DECISION AND ORDER - 29**

(5)    *Cumulating Errors*

Petitioner alleges that cumulating the errors of Mr. Carr amounts to ineffective assistance. As shown above, because no prejudice has been shown on any alleged error, there is nothing to cumulate. Petitioner's life deeds, not the performance of his counsel, earned him the sentence he received.

(6)    *Other General Arguments*

Petitioner is in error in asserting that, because no counsel was appointed on post-conviction review, prejudice must be presumed. This is a misstatement of the law, because *Martinez* specifically acknowledged that it was *not* mandating a requirement that burdened the State with the expense of appointment of post-conviction counsel in every case. 132 S.Ct. at 1319. Failure to appoint counsel relieves Petitioner from having to meet Prong 2; he must still show *Coleman* "prejudice" by showing he has met the substantiality test of Prong 1.

Petitioner further errs in asserting that he has "actually been denied the right to have the assistance of counsel during the entire direct appeal process, which violates the Sixth Amendment" (Dkt. 63, p. 3), because of Idaho's tradition of not permitting ineffective assistance of counsel claims to be brought on direct appeal and not appointing counsel for pro se litigants in initial post-conviction proceedings. This argument is without merit in the context of the current state of the law, as explained in *Martinez*. It is well-settled that ineffective assistance of counsel claims generally require evidentiary development that is impossible on direct review. *See, e.g., State v. Santana*, 135 Idaho 58,

14 P.3d 378 (Idaho Ct. App. 2000). Petitioner literally was not denied the right to counsel during direct appeal; just because ineffective assistance of trial counsel claims cannot be brought on direct appeal does not mean he was denied counsel for his direct appeal. Post-conviction review simply is *not* direct review, and Petitioner cannot create a constitutional claim from a stage of litigation that the United States Supreme Court has deemed unprotected by the Constitution. However, the equitable *Martinez* exception was particularly designed to aid convicted felons in bringing their IAC claims when they had no counsel or ineffective counsel during their first round of post-conviction proceedings.

**3.     Conclusion**

Petitioner is not entitled to have the merits of his ineffective assistance of counsel claims heard, because he has not shown that he has a substantial claim that warrants application of *Martinez v. Ryan*, for failure to meet Prongs 1(a) and/or (b). Hence, Petitioner's Motion to Proceed on Defaulted Claims under *Martinez v. Ryan* will be denied.

ORDER

**IT IS ORDERED:**

1.     Petitioner's Motion to Reconsider Dismissal of Writ of Habeas Corpus (Dkt. 45) is DENIED.

2.      Petitioner's Motion to Stay Proceedings and/or to Allow Petitioner to Present a Successive Petition Upon the Finalization of His Motion for Rule 35 (Illegal Sentence) in the Lower State Courts (Dkt. 55) is DENIED.

3.    Petitioner's Motion to Allow Petitioner to Proceed Under *Martinez v. Ryan* is DENIED.

4.    Respondent's Motions for Extension of Time to File Responses (Dkts. 59, 60, 62) are GRANTED.

5.    The Court does not find its resolution of the post-judgment motions to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  **September 24, 2014**

Honorable Edward J. Lodge
U. S. District Judge